UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------

In Re:

|  |  |
|---|---|
| CLINTON B. HENDERSON d/b/a | Chapter 7 |
| BOOKSTOCK US d/b/a | Case No.: 08-60255 |
| CB HENDERSON CONSTRUCTION | |
| CO. and RENATA HENDERSON, | |

*Debtors.*

------------------------------------------------------------

|  |  |
|---|---|
| RONALD J. SCHEIDELMAN and | |
| KHALIDA SCHEIDELMAN, | Adv. Pro. No.: 09-80035 |

*Plaintiffs*,

vs.

CLINTON B. HENDERSON and
RENATA HENDERSON,

*Defendants*.

------------------------------------------------------------

APPEARANCES:

RONALD J. SCHEIDELMAN and
KHALIDA SCHEIDELMAN
*Pro Se Plaintiffs*
3 Greene Street
Oxford, New York 13830

| | |
|---|---|
| PETER A. ORVILLE, P.C. | PETER A. ORVILLE, ESQ. |
| *Attorneys for Debtors-Defendants* | |
| 30 Riverside Drive | |
| Binghamton, New York 13905 | |

JAMES C. COLLINS, ESQ.
*Chapter 7 Trustee*
P.O. Box 713
Whitney Point, New York 13862-0713

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER ON DEBTORS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

The Plaintiffs, Dr. Ronald J. Scheidelman and Khalida Scheidelman (collectively, "Plaintiffs" or "Scheidelmans"), acting *pro se*, commenced the instant adversary proceeding on May 21, 2009, by filing a 131 paragraph adversary complaint (Adv. No. 1, the "Complaint")[1] alleging what Plaintiffs classified as four separate causes of action pursuant to 11 U.S.C. §§ 523(a)(4), (6), 727(a)(3), (4)(A), (4)(B), and (6)(A).[2] The Defendants are the Debtors, Clinton B. Henderson and Renata Henderson (collectively, "Debtors" or "Hendersons"), who filed a joint petition under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (effective Oct. 17, 2005) ("Code"),[3] on February 8, 2008, and voluntarily converted from a case under Chapter 13 to one under Chapter 7 on July 24, 2008. Presently before the Court is Debtors' motion to dismiss Plaintiffs' 217 paragraph Second Amended Adversarial Complaint filed on October 1, 2009 (Adv. No. 19, "Second Amended Complaint"), wherein Plaintiffs allege sixty-one causes of action

---

[1] Documents filed in this adversary proceeding are referred to herein as "Adv. No. ___." Documents filed in the lead Chapter 7 case, Case No. 08-60255, are referred to herein as "No. ___

[2] The Complaint includes a fifth and final cause of action whereby Plaintiffs seek injunctive relief to stay any further rulings by the undersigned in the adversary proceeding by way of erroneous reference to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7001(6), which merely provides that proceedings to determine dischargeability of a debt must be commenced through an adversary proceeding. Plaintiffs' request for injunctive relief has since been dispensed with, however, by virtue of the appellate process. Plaintiffs' request is premised upon their filing of a motion, as amended, to recuse the undersigned in Debtors' case and all related proceedings on May 4, 2009 (Nos. 182 and 197), which the Court denied by Memorandum-Decision, Findings of Fact, Conclusions of Law and Order entered on May 27, 2009 (No. 194, "Recusal Decision"). Plaintiffs appealed the Recusal Decision and by Decision and Order dated December 14, 2009 (No. 241), the Honorable David N. Hurd, United States District Judge, affirmed this Court. In so doing, Judge Hurd concluded that "disqualification or recusal is not necessary or advisable" since there were no facts to support Scheidelmans' allegations of impartiality and bias.

[3] Unless otherwise specified, all section references referred to herein are to the Code.

3

pursuant to §§ 523 and 727.  Alternatively, Debtors ask the Court to require Plaintiffs to produce

a more definite statement.

## JURISDICTION

This Court has jurisdiction over the parties and subject matter of this adversary proceeding

pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and (b).  This is a core proceeding which the Court may

hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(I) and (J).

## PROCEDURAL AND FACTUAL HISTORY

Given the contentiousness of the parties since the commencement of Debtors' case, the Court

has decided several motions and thereby generated a voluminous record.  The Court assumes

familiarity with its prior rulings, orders, and decisions, including the Recusal Decision, which sets

forth the relevant procedural history through May 27, 2009.  The Court will therefore limit its

background discussion to additional or subsequent facts relevant to the matter under consideration.

Plaintiffs have diligently pursued Debtors in order to effectively investigate and flesh out

their claims since the filing of Debtors' petition on February 2, 2008.  Plaintiffs were afforded an

opportunity to question Debtors at the initial, pre-conversion § 341 meeting of creditors held on

March 5, 2008, as well as at the initial, post-conversion § 341 meeting of creditors held on

September 10, 2008, and at all continued meetings held on October 6, October 20, November 3, and

December 8, 2008.  Moreover, on March 9, 2009, Plaintiffs deposed Debtors pursuant to Federal

Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2004 ("Rule 2004 Exam").  After a complete

investigation of Debtors' estate, the Chapter 7 Trustee classified Debtors' case as a no-asset case.

The Trustee's report to this effect was docketed on May 15, 2009 ("No-Asset Report").

The original deadline for filing a complaint under § 523 in the Debtors' Chapter 13 case was

4

set for March 5, 2008. Upon conversion, the new deadline for filing a complaint objecting to Debtors' Chapter 7 discharge or dischargeability of certain debts was set for November 7, 2008.[4] In order to allow Plaintiffs sufficient time to fully investigate their claims, Plaintiffs requested and obtained three extensions of time to commence the instant adversary proceeding on May 21, 2009.[5] Accordingly, Plaintiffs were allowed more than fourteen months from the original date set to object the dischargeability of certain debts in Debtors' Chapter 13 case, and more than six months from the original date set to object to issuance of Debtors' general discharge in Debtors' Chapter 7 case.[6]

---

[4] Bankruptcy Rule 4004(a) provides, "[i]n a chapter 7 liquidation case a complaint objecting to the debtor's discharge under § 727(a) of the Code shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Subsection (b) of the Rule allows the Court to extend the time "for cause," provided the party requesting the extension files a motion before the sixty day period lapses. Similarly, Bankruptcy Rule 4007(c) provides, "a complaint to determine the dischargeability of a debt under § 523(c) [referencing § 523(a)(2), (4), and (6) debts] shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." The Court may grant additional time to a party in interest under this Rule as well, provided the party files a motion before the sixty day period lapses and "cause" is shown.

[5] Bankruptcy Rule 4007(c) provides, "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." As noted above, the original deadline for filing a complaint objecting to the dischargeability of certain debts in Debtors' Chapter 13 case was set for March 5, 2008. Debtors' conversion to Chapter 7 triggered a new deadline of November 7, 2008, for filing a complaint under § 523 and/or 727. After a series of extensions granted by the undersigned, Chief Judge Littlefield, and Retired Chief Judge Gerling, the Clerk entered an Order on May 8, 2009 (No. 186), extending the deadline for Plaintiffs to commence the instant adversary proceeding to May 19, 2009.

[6] Dr. Scheidelman is listed on Debtors' Schedule F as a general unsecured claimant holding a disputed claim in the amount of $51,000.00. Debtors state the origin of Dr. Scheidelman's claim on Schedule G as an executory contract for the construction by Mr. Henderson of an addition to Plaintiffs' home. Plaintiffs filed a series of claims in Debtors' case, including: (1) Proof of Claim No. 9 filed by Mrs. Henderson individually on April 14, 2008, in the amount of $141,997.00; (2) Proof of Claim No. 12 filed by Plaintiffs jointly on May 1, 2008, in the amount of $149,168.20, which purportedly seeks to amend Proof of Claim No. 9; and (3) Proof of Claim No. 20 filed by Plaintiffs jointly on February 6, 2009, in the amount of $185,821.68, which amends Proof of Claim No. 9. The Court may reach the validity or fix the

5

On June 9, 2009, Debtors moved for a more definite statement or, in the alternative, to dismiss the adversary proceeding commenced on May 21, 2009.  (Adv. No. 3, "First Dismissal Motion.")  The Court heard the First Dismissal Motion at its regular motion term calendar in Binghamton, New York, on August 6, 2009, and, after continuation, on September 3, 2009.  In the interim, on July 31, 2009, Plaintiffs filed an Amended Complaint, without Debtors' consent or leave of court.  (Adv. No. 8, "First Amended Complaint.")  On August 26, 2009, Plaintiffs filed a motion to extend time to file a second amended pleading, which they subsequently amended on September 11, 2009.  (Adv. Nos. 11 and 14, "Plaintiffs' Motion to Extend Time to Amend.")  At the September 3, 2009 hearing, Debtors' counsel objected to the First Amended Complaint for the reason that it also failed to contain a more definite statement.   After a series of hearings on the parties' respective motions, by Order dated September 14, 2009 (Adv. No. 17), the Court granted Debtors' request for a more definite statement and allowed Plaintiffs thirty days to file an amended pleading.[7]  Plaintiffs were required to and did file their second amended pleading on or before October 1, 2009.  On October 20, 2009, Debtors filed the second dismissal motion presently under consideration.  The Court heard the motion at its regular motion term in Binghamton, New York, on December 2, 2009,

---

amount of Plaintiffs' claim only if Plaintiffs prevail on a claim of nondischargeability under § 523, *see Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 176 (Bankr. E.D. Pa. 2006) ("A bankruptcy court does have the power, even in a no-asset case, to fix a claim in connection with non-dischargeability litigation, and in appropriate circumstances may elect to do so."), which remains speculative at this stage in the proceeding.

[7] This ruling was made over the objection of Debtors' counsel because the Court awarded Plaintiffs three times the statutorily allotted time to cure a deficient pleading.  Federal Rule of Civil Procedure ("Rule") 12(e), made applicable to this adversary proceeding by Bankruptcy Rule 7012, provides "[i]f the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order."

6

and the parties were advised after oral argument that the motion would be taken under submission

for the Court's issuance of a written decision.[8]

## ARGUMENTS

Debtors raise three procedural objections to Plaintiffs' Second Amended Complaint. First,

Debtors assert that the Second Amended Complaint does not comport with Federal Rule of Civil

Procedure ("Rule") 8(a)(2),[9] made applicable to this proceeding by Federal Rule of Bankruptcy

Procedure ("Bankruptcy Rule") 7008(a), because the pleading is so unintelligible and ambiguous

---

[8] The parties were given an opportunity to file memoranda of law but Debtors declined to do so by December 12, 2009, as instructed by the Court, thereby obviating the need for any further submission by Plaintiffs.

[9] Rule 8, entitled "General Rules of Pleading," provides in relevant part:

**(a) Claim for Relief.**  A pleading that states a claim for relief must contain:
  (1)  a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
  (2)  a short and plain statement of the claim showing that the pleader is entitled to relief; and
  (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.
. . . .

**(d) Pleading to Be Concise and Direct; Alternative Statements; Inconsistency.**
  **(1) In General.**  Each allegation must be simple, concise, and direct.  No technical form is required.
  **(2) Alternative Statements of a Claim or Defense.**  A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or in separate ones.  If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
  **(3) Inconsistent Claims or Defenses.**  A party may state as many separate claims or defenses as it has, regardless of consistency.
**(e) Construing Pleadings**.  Pleadings must be construed so as to do substantial justice.

FED. R. CIV. P. 8.

that it fails to put Debtors on notice of Plaintiffs' claims or the facts upon which they rest. As such, Debtors contend they cannot adequately respond or prepare a defense to the Second Amended Complaint. Second, Debtors claim that the Second Amended Complaint violates Rule 8(d) because it is not "simple, concise, and direct." Debtors further contend that Plaintiffs' failure to comply with the general rules of pleading is inexcusable given that Plaintiffs have been granted ample opportunity to present a legally sufficient pleading. Third, Debtors assert that Plaintiffs have improperly added new causes of action, including causes of action against Debtors' counsel, Attorney Orville. Should Plaintiffs be allowed to proceed with any cause of action against Attorney Orville, Debtors assert that they would be unduly prejudiced by having to proceed *pro se* following Attorney Orville's necessary disengagement due to a conflict of interest created by Plaintiffs.

Plaintiffs advance several arguments in opposition to Debtors' motion.[10] Plaintiffs assert that the Second Amended Complaint is pleaded with particularity so as to allow Debtors to respond to each and every allegation asserted against them. Moreover, Plaintiffs contend that they have not added any new causes of action in the Second Amended Complaint. In support of this argument, however, Plaintiffs refer back to their claims made in the First Amended Complaint. Notably, Plaintiffs advance their own procedural argument in support of survival of their Second Amended

---

[10]The Court has considered Plaintiffs' arguments as set forth in their November 24, 2009 Objections to Motion to Dismiss (Adv. No. 27), in their entirety but it will not separately address each argument advanced by Plaintiffs for the reason that certain arguments bear no legal justification or force whatsoever. For example, Plaintiffs erroneously apply the notice pleading requirements set forth in Rule 8(a)(2) for *claims* to Debtors' motion for dismissal and *defenses*, thereby improperly concluding that the Debtors' motion must be denied because it lacks a short or plain statement. While the Court as a general practice generously reads *pro se* papers, it cannot needlessly expend substantial time and judicial resources on nonsensical or irrelevant material, irrespective of whether such allegations or theories are advanced by a *pro se* litigant or counsel.

8

Complaint. Citing *Cintron-Luna v. Roman-Bultron*, 2009 U.S. Dist. LEXIS 108347, at *8 (D. P.R. Oct. 22, 2009) (Rule 8 dismissal generally reserved for cases in which the complaint is so confusing, ambiguous, vague, or otherwise unintelligible that its true substance cannot be readily ascertained) (internal quotation marks and citations omitted), Plaintiffs maintain that the Court should deny Debtors' motion because their Second Amended Complaint does not fall within the category of complaints typically warranting dismissal for failure to comply with the general rules of pleading.

## PLAINTIFFS' CAUSES OF ACTION

This adversary proceeding has its origin in a home improvement contract entered into by the parties on or about January 16, 2006, whereby Mr. Henderson agreed to perform certain construction services to improve the Scheidelmans' residence in exchange for payment in the amount of $80,000.00 ("Contract"). Mr. Henderson commenced work on the Scheidelmans' home but he did not complete the scheduled renovations. These facts are agreed upon. All other facts, however, regarding the circumstances of the parties' abbreviated relationship are in dispute.[11]

At the outset, the Court notes that the Second Amended Complaint is rife with erroneous statutory references and it contains a multitude of incomplete, repetitive, and/or conclusory statements. Plaintiffs oftentimes confuse or mix the elements of §§ 523 and 727, and they fail to differentiate between separate and distinct legal theories such as fraud or defalcation while acting in a fiduciary capacity, embezzlement, *or* larceny. *See* 11 U.S.C. § 523(a)(4) (emphasis added). The

---

[11]This background information is necessary to give context to Plaintiffs' pleadings, all of which delve directly into allegations of fraud and wrongdoing by Debtors. While the parties' differing recollections and factual accounts are interesting, the Court will refrain from reciting them here. Exactly how the parties arrived at their current litigious state is unimportant solely for purposes of the Court's present ruling given that the Court must accept as true all factual allegations contained in Plaintiffs' Second Amended Complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Complaint is similarly drafted.  Plaintiffs' causes of action are difficult to decipher as a result of

such draftsmanship.  Since all of the facts alleged in the Second Amended Complaint arose out of

the same conduct alleged in the Complaint, however, they do relate back to the original pleading

rather than add entirely new claims for relief.  After carefully examining the Second Amended

Complaint, however, the Court has narrowed Plaintiffs' core allegations to comprise the following

fourteen causes of action:

(1)      In violation of § 727(a)(4)(A) and (B), Debtors individually knowingly and fraudulently made false oaths and presented a false claim by listing on Schedule D a business debt owed to Reuben Fisher ("Fisher"), one of Mr. Henderson's subcontractors, in the amount of $36,500.00, which Debtors attributed to work done by Fisher on Plaintiffs' home in connection with the Contract. (*See* Pls.' Second Am. Compl. Actions 1-4 & 6-9, ¶¶ 1-22 & 28-36.);

(2)      In violation of § 727(a)(4)(A) and (B), Debtors individually knowingly and fraudulently made false oaths and presented false claims by indicating on Schedule B that debts owed to Fisher and to Daniel Kurtz ("Kurtz"), another of Mr. Henderson's subcontractors, were secured by an account receivable owed to Mr. Henderson by Plaintiffs in the amount of $29,000.00 for the unpaid balance due in connection with the Contract.  (*See id.* Actions 1-5 & 7-9, ¶¶ 1-27 & 32-36.);

(3)      In violation of § 727(a)(4)(A) and (B), Debtors individually knowingly and fraudulently made false oaths and presented a false claim by asserting that Plaintiffs owed Mr. Henderson $29,000.00 for services rendered in connection with the Contract.  (*See id.* Action 15, ¶¶ 54-55.);

(4)      The alleged complicity of Attorney Orville in Debtors' purported fraudulent acts is set forth as a separate and distinct basis for denial of Debtors' discharge pursuant to § 727(a)(4)(A) and (B).  (*See id.* Actions 10-13, 16, & 23-25, ¶¶ 37-48, 56-59, & 77-85.);

(5)      In violation of § 727(a)(4)(A), Mr. Henderson knowingly and fraudulently made false statements under oath at Debtors' §

341 meetings and at the Rule 2004 Exam, as well as in his written response to direct inquiries from the Chapter 7 Trustee regarding the same subject matter. (*See id.* Actions 14 & 21, ¶¶ 49-53 & 71-73.);

(6)     In violation of § 727(a)(4)(A), Debtors individually knowingly and fraudulently made false oaths by failing to accurately list a debt owed to the New York State Workers' Compensation Board on both their initial and Amended Schedules D and F. (*See id.* Actions 17-22, ¶¶ 60-76.);

(7)     In violation of § 727(a)(3), Debtors unjustifiably failed to keep or preserve any recorded information from which their financial condition or business transactions might be ascertained. (*See id.* Action 28, ¶¶ 97-99.);

(8)     In violation of § 727(a)(6)(A), Debtors refused to obey discovery and other Orders issued by the Honorable Stephen D. Gerling. (*See id.*);

(9)     Plaintiffs' debt is nondischargeable pursuant to § 523(a)(2)(A) because all monies paid by Plaintiffs to Mr. Henderson under the Contract were obtained by false pretenses, false representations, or actual fraud. (*Id.* Actions 29-56, ¶¶ 100-97.)

(10)    Plaintiffs' debt is nondischargeable pursuant to § 523(a)(4) because Mr. Henderson took and spent the $20,000.00 deposit paid to him by Plaintiffs under the Contract "on matters unconnected with the Contract." (*Id.* Action 57, ¶¶ 198-204.)

(11)    Plaintiffs' debt is nondischargeable pursuant to § 523(a)(6) because Mr. Henderson's conduct as general contractor under the Contract was "gravely negligent." (*Id.* Action 58, ¶¶ 205-07.);

(12)    Plaintiffs' debt is nondischargeable pursuant to § 523(a)(6) because Mr. Henderson's "wanton negligence" caused Mrs. Sheidelman to be electrically shocked and burned by live wires left exposed during construction at Plaintiffs' home. Further, Mr. Henderson failed to remove gravel from Plaintiffs' basement steps or to replace a stair damaged by his subcontractor. (*Id.* Action 59, ¶¶ 208-09.);

(13)    Plaintiffs' debt is nondischargeable pursuant to § 523(a)(6) because Mr. Henderson accused Dr. Scheidelman of "being a liar," and he "stood behind Dr. Scheidelman at the ready" during an altercation between Dr. Scheidelman and Kurtz, thereby engaging in a crime of violence.  (*Id.* Action 60, ¶¶ 210-13.); and

(14)    Plaintiffs' debt is nondischargeable pursuant to § 523(a)(6) because Mr. Henderson performed "willful and malicious sham work" at Plaintiffs' home. (*Id.* Action 61, ¶¶ 214-216.)

**DISCUSSION**

**I.    Dismissal Under Rule 8(a)(2)**

Debtors' motion is premised on Plaintiffs' failure to satisfy the pleading requirements enumerated in Rule 8(a)(2) and (d).  While the Court would be hesitant to force Debtors or their counsel to undertake the exercise, as the Court has done, of restructuring or restating the Second Amended Complaint by ferreting out the relevant material in order to determine Plaintiffs' precise bases for relief and to formulate a comprehensive response, the Court declines to strike the Second Amended Complaint in its entirety on the ground that it is insufficient under Rule 8.[12]

---

[12]The Court would be remiss to ignore Plaintiffs' continued failure in the Second Amended Complaint to comply with Rule 9(b), made applicable to this adversary proceeding by Bankruptcy Rule 7009.  Rule 9, entitled "Pleading Special Matters," provides in relevant part:

**(b) Fraud or Mistake; Conditions of Mind.**  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

FED. R. CIV. P. 9(b).  Rule 9(b) is designed to give defendants detailed notice of the fraud claims asserted against them and to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to safeguard defendants from harm to their reputation from improvident charges of wrongdoing, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis. *Enron Wind Energy Sys., LLC v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*, 367 B.R. 384, 393 (Bankr. S.D.N.Y. 2007) (internal quotation marks and citation omitted).  In light of the Court's broader

Rule 8 tests the sufficiency of the pleading rather than the sufficiency of the cause of action or claims asserted therein. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211 n.15 (N.D.N.Y. 2008) (collecting cases distinguishing between the notice requirements of Rule 8(a) and the cognizable claim requirement of Rule 12(b)(6)). The purpose of Rule 8 is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (*quoting Conley v. Gibson*, 335 U.S. 41, 47 (1957)). To survive a motion to dismiss under Rule 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d) supplements subsection (a) by requiring that "[e]ach allegation . . . be simple, concise, and direct." Detailed statements of fact are not required, but the plaintiff must include something more than mere conclusory statements or "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). A pleading that offers nothing more than "threadbare recitals of the elements of a cause of action," without supporting factual allegations, will not suffice. *Id.* at 1950 (*citing Twombly,* 155 U.S. at 555).

Where, as here, the plaintiffs are unrepresented, the Court must proceed with heightened sensitivity to ensure that the pleadings are "construed so as to do justice" as is required by Rule 8(e). *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings . . . .") (*quoting Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *but see, e.g., Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."); *Cintron-Luna,* U.S. Dist. LEXIS 108347, at *7 ("While pro se litigants' pleadings are to be liberally construed and the Court takes a more lenient stance towards their technical defects, this is no excuse

---

ruling in this matter, however, this issue becomes moot and requires no further consideration.

13

for the failure to make comprehensible the specific claims and facts supporting those claims that would comprise a plausible claim for relief."); *Goodman v. Mr. Goodbuys of New York Corp., Inc. (In re Mr. Goodbuys of New York Corp., Inc.)*, 164 B.R. 24, 27-28 (Bankr. E.D.N.Y. 1994) (noting that there are limits to the less stringent standards and liberal pleading rules, however, even for *pro se* litigants).

Whether a party has satisfied Rule 8 must be analyzed on the basis of the subject matter of the litigation, the nature of the claims presented and the relief sought, the respective positions of the parties in terms of the availability of information, the situation of the parties, and a number of other pragmatic matters.  5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §§ 1217 & 1281 (3d ed. 2009).  At the outset, the Court notes that "Rule 8(a) sets a lower bar than Rule 12(b)(6) or 9(b), and 'does not require a plaintiff to plead the legal theory, facts, or elements underlying his claim.'"  *Silverman v. H.I.L. Assocs. Ltd. (In re Allou Distribs, Inc.)*, 387 B.R. 365, 386 (Bankr. E.D.N.Y. 2008) (*quoting Koch v. Hicks (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.)*, 457 F. Supp. 2d 298, 303-04 (S.D.N.Y. 2006)).  In reaching its conclusion that Plaintiffs' have done enough to loosely satisfy the minimum bar of Rule 8, the Court has considered three main factors.  First, the facts underlying Plaintiffs' claims do not arise out of a complicated transaction but rather stem from a simple contract dispute and the parties' limited dealings with one another.  Second, the bases for recovery under either §§ 523 or 727 are well-established nationally and in the Second Circuit, thereby limiting the universe of claims that could be asserted by Plaintiffs.  Third, when the Second Amended Complaint is stripped of excess verbiage and redundant statements, what remains are allegations of omissions or inconsistencies in Debtors' schedules, deliberate disregard for court orders, improper use of funds, negligence, and a

threat of violence.

Plaintiffs have had ample opportunity to amend and refine the Complaint and the Court has, to the extent permissible, provided guidance to assist Plaintiffs in their endeavor to cure pleading defects.  In light of the stylistic and substantive similarities between the Complaint and the Second Amended Complaint, it is evident that neither the Court nor the parties would be well-served by Plaintiffs' further amendment of the pleadings as is customary when dismissal is granted under Rule 8.  *See, e.g., Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (given the "jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities," leave to amend should be granted when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8).[13]

 Plaintiffs have admittedly poured their energies into the Second Amended Complaint, the proceeding has not moved beyond the initial pleading stage notwithstanding that Debtors' discharge has been held in abeyance for more than one year, and the parties are deserving of resolution without sacrificing additional time, energy, and costs.  Because the Court desires at this juncture to balance the equities of the parties as well as to preserve judicial resources, the Court will turn its consideration to whether any possible cause of action exists so as to survive dismissal on the merits under Rule 12(b)(6).[14]  *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE

---

[13]If the Court's inquiry were to end here, however, the Court would necessarily ease Debtors' burden of responding to the Second Amended Complaint by striking from the pleading any "redundant, immaterial, [or] impertinent material" as permitted by Rule 12(f).  For reasons discussed in depth *infra*, the Court has determined that the procedural posture and circumstances of this proceeding demand a different disposition.

[14] Rule 12(b), entitled "Defenses and Objections; When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses, Pretrial Hearing," provides in relevant part:

AND PROCEDURE § 1217 (3d ed. 2009) ("In the exercise of their discretion and in order to promote

judicial economy, courts often will use a motion directed at the form of a pleading . . . as a vehicle

for considering whether any possible claim for relief exists.").

## II.    Dismissal Under Rule 12(b)(6)

The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for

"failure to state a claim upon which relief may be granted" if the complaint lacks an arguable basis

either in law or fact. *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Consol. Edition Co. of*

*New York v. Port Auth. (In re September 11 Litig.)*, 640 F. Supp. 2d 323 (2009) (*sua sponte*

dismissal proper "particularly where it is clear that a plaintiff could not have prevailed on the facts

as alleged in the complaint") (*quoting Korea Life Ins. Co. v. Morgan Guar. Trust Co. of N.Y.*, 269

F. Supp. 2d 424, 435 n.7 (S.D.N.Y. 2003)).   Notice and an opportunity for the nonmovant to be

heard are the only prerequisites to the Court's exercise of its inherent powers in this fashion.

*Thomas*, 943 F.2d at 260; *Bondi v. Grant Thornton Int'l (In re Parmalat Sec. Litig.),* 377 F. Supp.

2d 390, 415 (S.D.N.Y. 2005); *see also Murphy v. Lancaster*, 960 F.2d 746, 748 (8th Cir. 1992) (*sua*

*sponte* dismissal without prior notice under Rule 12(b)(6) is authorized only when it is patently

obvious the plaintiff cannot prevail based on the facts alleged in the complaint) (internal quotation

marks and citation omitted).   The Court is satisfied after reviewing the record in this adversary

---

**(b) How to Present Defenses.**  Every defense to a claim for relief in any pleading
must be asserted in the responsive pleading if one is required.  But a party may
assert the following defenses by motion:
    . . . .
    (6) failure to state a claim upon which relief can be granted; . . .

FED. R. CIV. P. 12(b)(6).

proceeding that the instant Plaintiffs have been provided a fair opportunity to defend dismissal of the adversary proceeding on the merits under Rule 12(b)(6).[15] *See Uka v. Mama's Bar & Grill Rest.*, 2006 U.S. Dist. LEXIS 42549, at *14 (E.D. Mo. June 23, 2006) (district court dismissed *pro se* plaintiffs' complaint *sua sponte* where defendants had moved to dismiss on grounds of failure to state a claim upon which relief could be granted and failure to comply with Rule 8).

The Court's task under Rule 12(b)(6) is "necessarily a limited one" to determine the legal sufficiency of a complaint and not to assay the factual basis of a claim for relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In so doing, the Court must accept as true all well-pleaded factual allegations, draw all reasonable inferences in favor of plaintiff, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 129 S. Ct. at 1950; *Twombly*, 550 U.S. at 555. However, if a complaint's allegations are clearly contradicted by documents incorporated into the pleadings by reference, the Court need not accept them. *Labajo v. Best Buy Stores, L.P.,* 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007).

The Court's consideration at this stage is limited to the four corners of the complaint, namely the documents attached to the complaint as exhibits or incorporated by reference, matters subject to judicial notice, and documents on which plaintiff relied in bringing suit. *Brass v. Am. Film Techs, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). If the complaint does not contain sufficient facts accepted as true to state a claim that is "plausible on its face," *Twombly*, 550 U.S. at 570, the plaintiff must

---

[15] Specifically, the Court reviewed the record and listened to the hearings related to the First Dismissal Motion, Plaintiffs' Motion to Extend Time to Amend, and the motion presently under consideration. During oral argument on December 2, 2009, Dr. Scheidelman stated that the Second Amended Complaint includes "counts set out in particular detail," and he indicated that Plaintiffs are the ones who have been prejudiced by a delay of twenty months. Finality in this proceeding, therefore, seemingly appears to be a unanimous goal.

then allege sufficient facts to "nudge the claim across the line from conceivable to plausible." *Id.* Otherwise the defendant should not be subject to the burdens of discovery and the concern of continued litigation. *Iqbal*, 129 S. Ct. at 1950 ("Rule 8 marks a notable and generous departure from the from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Dismissal is therefore appropriate when the plaintiff would not be entitled to any type of relief, even if plaintiff were to prevail on the veracity of its factual allegations. *See In re Jennings*, 188 B.R. 110, 113 (Bankr. E.D.N.Y. 1995) (*citing Dopico v. Goldschmidt*, 687 F.2d 644, 649 (2d Cir. 1982); *Wedtech Corp. v. Nofziger (In re Wedtech Corp.)*, 88 B.R. 619, 622 (Bankr. S.D.N.Y. 1988)).

As a preliminary matter, before turning to an in depth discussion of Plaintiffs' separate causes of action, the Court must dispense with certain § 523 causes of action against Mrs. Henderson resulting from Plaintiffs' global approach to pleading. Plaintiffs do not identify which causes of action belong solely to Mr. Henderson, leaving the Court to assume that all causes of action are asserted against both Mr. and Mrs. Henderson notwithstanding that Mrs. Henderson was not a party to the Contract underlying the parties dispute. Absent a very specific showing, the actions or intent of a co-debtor spouse will not be imputed to the debtor or "innocent" debtor spouse for purposes of non-dischargeability of a specific debt. *See, e.g., In re Antonious*, 358 B.R. at 184 (As a general rule, fraudulent practices of one spouse are not imputed to the other "innocent" spouse for purposes of non-dischargeability unless there is evidence of an agency or partnership relationship.). A spouse can also be liable for the fraud or misrepresentation of the other spouse if the spouse knowingly aided and abetted in that fraud or misrepresentation. *Id.* at 185 *(citing In re Markarian*, 228 B.R. 34, 40-41 (B.A.P. 1st Cir. 1998)). Since Plaintiffs have not directly accused Mrs. Henderson of any

18

conduct within the purview of § 523(a), the Court summarily dismisses with prejudice all § 523(a) causes of action against her.

The Court must also dismiss Plaintiffs' stated causes of action under § 727 against Debtors which are separately asserted and grounded upon the alleged conduct or complicity of their counsel, Attorney Orville.  While an attorney's conduct in the course of his or her representation of a client may be sanctionable, as distinguishable from purely zealous, it simply cannot serve as a basis against the debtor-client to deny discharge or except from discharge a specific debt.  The privilege of a full or partial discharge is dependent solely upon the conduct of the debtor or, in certain instances, the debtor's agent.  A creditor seeking relief under §§ 523 and 727 must show that the debtor affirmatively engaged in objectionable conduct.  *See, e.g., Hudson v. Corvetti*, 2007 U.S. Dist. LEXIS 49481, at *3 n.1 (N.D.N.Y. July 9, 2007) ("Section 727 is the gatekeeper for allowing only honest debtors the extraordinary relief afforded by the Bankruptcy Code.  It is a guardian of the bankruptcy system; it proscribes dishonest, deceptive, and disingenuous *debtor conduct* that is part of or related to the bankruptcy system . . . .") (emphasis added and citation omitted).

### A.      Discharge and Dischargeability Generally

Given the drastic and punitive nature of § 727, it must be strictly construed against those who object to a debtor's discharge and liberally construed in favor of the debtor.  *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996).  "A party seeking to bar a debtor from discharge and concomitant 'fresh start,' which objective represents the ultimate goal of bankruptcy relief, must articulate well-pleaded allegations establishing the required elements of a cause of action under one or more provisions of § 727."  *Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992).  Exceptions to discharge under § 523 must be similarly

19

construed so as to give maximum effect to the Code's policy of providing honest but unfortunate debtors with a "fresh start." *Contini v. Cook (In re Cook)*, 2009 Bankr. LEXIS 2646, at *10-11 (Bankr. N.D.N.Y. Apr. 7, 2009) (*citing Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 853 (8th Cir. 1997), *aff'd*, 523 U.S. 57 (1998)).  To sustain a cause of action under either § 523 or § 727, the creditor must establish each element of the statute by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Martin v. Key Bank, N.A. (In re Martin)*, 208 B.R. 799, 805 (N.D.N.Y. 1997) (*citing In re Serafini*, 938 F.2d 1156, 1157 (10th Cir. 1991); *In re Wolfson*, 139 B.R. 279, 285 (Bankr. S.D.N.Y. 1992), *aff'd*, 152 B.R. 830 (S.D.N.Y. 1993)).

### B.    Denial of Discharge under § 727(a)(3)

Section 727(a)(3) states, in relevant part:

> The court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such failure to act was justified under all of the circumstances of the case.

"The purpose of this section is to give a creditor and the court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite of a discharge." *Bay View Laundry, Inc. v. Artura (In re Artura)*, 165 B.R. 12, 15 (Bankr. E.D.N.Y. 1994) (citations omitted); *see also Fid. Nat'l Title Ins. Co. of New York v. Kurtaj (In re Kurtaj)*, 284 B.R. 528, 531 (Bankr. D. Conn. 2002) ("The policy served by [debtor's disclosure] obligation is to give unsecured and undersecured creditors the ability to trace a debtor's financial history to determine whether they are being treated fairly."); *Hughes v. Wells (In re Wells)*, 2006 Bankr. LEXIS 4539, at *25 (Bankr. N.D. Tex. May 4, 2006) (purpose of recordkeeping duty is to allow creditors to determine what property has passed through the debtor's hands) (citation omitted).

The elements of a § 727(a)(3) claim are simple and concise: (1) the creditor must prove that the debtor failed to keep or preserve records; and (2) such failure was not reasonable under the circumstances and this failure makes it impossible to ascertain the debtor's true financial condition or business transactions. *See In re Artura*, 165 B.R. at 15 *(citing In re Underhill*, 82 F.2d 258 (2d Cir.), *cert. denied*, 299 U.S. 546 (1936); *Shiboleth v. Yerushalmi (In re Yerushalmi)*, 393 B.R. 288, 297 (Bankr. E.D.N.Y. 2008)). All records that are necessary to understand a debtor's financial condition are within the scope of this section. *Buckeye Ret. Co. v. Bishop (In re Bishop)*, 2009 Bankr. LEXIS 431, at *16 (Bankr. N.D. Al. Feb. 6, 2009); *Serv. Liquor Dists., Inc. v. Gudowitz (In re Gudowitz)*, 1986 Bankr. LEXIS 5735 (Bankr. S.D.N.Y. July 8, 1986) (all books and materials which shed light on what was done with a debtor's estate and the factors which led to the filing for relief are material to a § 727(a)(3) analysis). In a personal bankruptcy case, "the quintessential documents that must be preserved and kept are debtor's income tax returns." *In re Wells*, 2006 Bankr. LEXIS 4539, at *26 (internal quotation marks and citation omitted); *see also*, 11 U.S.C. § 521(e)(2)(A) (a debtor is statutorily obligated to provide the case trustee and creditors who request the same with a copy of his or her Federal tax return or transcript for the most recent tax year ending immediately before commencement of the case) and § 521(f) (a debtor is statutorily obligated to file with the court late-filed Federal tax returns for years preceding the bankruptcy filing and future Federal tax returns for each tax year while the bankruptcy case is pending).[16] The debtor's failure

---

[16]Relevant, but not controlling, to the Court's determination that Plaintiffs cannot make out a plausible claim for relief under § 727(a)(3) is the fact that Debtors would have had to provide tax returns pursuant to § 521 to the case trustee both pre- and post-conversion. The Chapter 7 Trustee has by filing a "No Asset Report" attested to having made "diligent inquiry into the [Debtors'] financial affairs," which necessarily includes review of Debtors' tax returns, unless Debtors could not provide the same due to circumstances beyond their control, and certified that the case has been fully administered.

to provide bank and credit card statements can also form the basis for denying a discharge under § 727(a)(3) since those documents "form the core of what is necessary to ascertain the debtor's financial condition, primarily his use of case assets." *Ochs v. Nemes (In re Nemes)*, 323 B.R. 316, 324 (Bankr. E.D.N.Y. 2005).

The determination of whether a debtor has maintained adequate records is particularly fact intensive and must be decided on a case by case basis. *In re Underhill*, 82 F.2d at 260; *Buckeye Ret. Co., L.L.C., Ltd. v. Hake (In re Hake)*, 387 B.R. 490, 506 (Bankr. N.D. Oh. 2008). Considerations relevant to this determination include debtor's occupation, financial structure, education, experience, and sophistication. *Id.* (internal quotation marks and citations omitted).

In support of their § 727(a)(3) cause of action, Plaintiffs rely exclusively upon Debtors' failure to comply with their initial discovery demand filed in Debtors' pre-conversion Chapter 13 case in connection with Plaintiffs' objection to confirmation. (No. 12, Pl.'s Demand for Disc.) The discovery demand is comprised of seven items, all of which relate solely to one business transaction– the Contract. Plaintiffs moved to compel discovery on May 28, 2008 (No. 20), which was heard and granted by the Court on July 7, 2008. An Order to that effect was entered on July 11, 2008 (No. 31, "Discovery Order.") Plaintiffs brought a motion to compel discovery and for sanctions against Debtors on October 6, 2008 (No. 45), which was heard and granted in part by the Court on October 21, 2008. The Court, following a hearing on the matter, granted sanctions against Debtors for failure to obey the Discovery Order while it was in effect, but it also vacated the Discovery Order as moot in light of Debtors' conversion to Chapter 7. An Order to that effect was entered on October 23, 2008. (No. 53.)

Debtors provided the sought after information in connection with the Rule 2004 Exam and

Plaintiffs' submitted the same in support of their Complaint, including a list of subcontractors employed by Mr. Henderson in connection with the Contract and a general expense ledger itemizing payments made to subcontractors and suppliers in connection with the Contract.  (*See* Pls.' Compl., Ex. C.)  The Court finds it particularly troublesome that Plaintiffs continue to allege in their Second Amended Complaint that Debtors have "still failed to fulfill the demands of the [Discovery Order]," in light of the fact that the Discovery Order was vacated well before Plaintiffs filed their amended pleading.  Plaintiffs have neither alleged that Debtors failed to provide documentation, including tax returns or bank statements, from which their overall financial condition could be ascertained, nor have they provided the Court with sustainable facts to show that Debtors failed to keep or provide adequate records regarding Mr. Henderson's business transactions.  Accordingly, Plaintiffs have failed to sufficiently plead a cause of action under § 727(a)(3).

### C.    Denial of Discharge under § 727(a)(4)

*1.    Subsection (a)(4)(A) - False Oath or Account*

Section 727(a)(4)(A) provides that "the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account."  It is well-established that to prevail on a claim under this subsection, a plaintiff must prove the following: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made with fraudulent intent; and (5) the statement related materially to the bankruptcy case.  *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000) (*citing In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000)).  Qualifying statements include statements in documents, such as the bankruptcy schedules and statement of financial affairs, filed with the petition and statements by the debtor during

examinations under oath. *In re Kurtaj*, 248 B.R. 528, 529-30 (Bankr. D. Ct. 2002). Because a debtor is unlikely to admit having made a deliberate misstatement, knowledge of falsity or fraudulent intent may be found where the debtor acted with reckless disregard for the truth. *In re Murray*, 249 B.R. at 228 (*citing In re Scott*, 233 B.R. 32, 44 (Bankr. N.D.N.Y. 1998) (internal citation omitted)); *Republic Credit Corp. I v. Boyer (In re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Ct. 2007); *IBA, Inc. v. Hoyt (In re Hoyt)*, 337 B.R. 463, 466 (Bankr. W.D.N.Y. 2006). The requirement of materiality was judicially created to ensure that debtors are not denied discharge for inconsequential or technical misstatements. *In re Murray*, 249 B.R. at 228 (citations omitted). The accepted test for materiality in the Second Circuit is whether the false statement relates to the debtor's business transactions or estate or whether it is pertinent to the discovery of assets or the existence or disposition of property. *Wisell v. Wissell (In re Wisell)*, 2007 U.S. Dist. LEXIS 64011, at *9 (D. Vt. Aug. 28, 2007) (*citing In re Shah*, 169 B.R. 17 (Bankr. E.D.N.Y. 1994) (*citing In re Robinson*, 506 F.2d 1184, 1186 (2d Cir. 1974)).

Here, Plaintiffs assert that Debtors made false oaths in both their schedules and, in the case of Mr. Henderson, at the § 341 meeting of creditors and the Rule 2004 Exam by listing rather than omitting certain business debts and an account receivable arising out of the Contract on their schedules, erroneously classifying the debt as secured, continuing to make the alleged false oath in documents submitted to the Chapter 7 Trustee, and failing to accurately list a debt owed to the New York State Workers' Compensation Board. None of these allegations are sufficient to allege the intentional and fraudulent perpetration of false oath or account; even if Plaintiffs could satisfy the first four elements, none of the allegations demonstrate materiality to Debtors' case. In listing the disputed debt allegedly owed by Plaintiffs to Mr. Henderson, which Mr. Henderson then allegedly

owed to his subcontractors, Debtors scheduled what they believed to be an account receivable or asset of the bankruptcy case, in compliance with their statutory duties. This allowed the Chapter 7 Trustee to investigate and determine whether to marshal the asset for the benefit of the estate, which he ultimately abandoned. Debtors' failure to correctly schedule the debt amount owed to the New York State Workers' Compensation Board is also nonmaterial for obvious reasons–it relates to a debt rather than an asset or potential asset of Debtors' bankruptcy estate. Accordingly, Plaintiffs have not satisfied the Rule 12(b)(6) standard for pleading a cause of action under § 727(a)(4)(A).

2.    *Subsection (a)(4)(B) - False Claim*

Section 727(a)(4)(B) prohibits the granting of a discharge to a debtor who "knowingly and fraudulently, in or in connection with the case presented or used a false claim." This provision of the Code is sparsely used. *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487 (Bankr. E.D. Tenn. 2000) ("There is little case law applying § 727(a)(4)(B)."). The courts that have considered objections to discharge for presenting a false claim have required the plaintiff to prove that the debtor "presented or used an inflated or fictitious claim." *Id.* (citations omitted). Such cases generally involve the scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim. *Parnes v. Parnes (In re Parnes)*, 200 B.R. 710, 722 (Bankr. D. Ga. 1996) (*citing Garcia v. Garcia (In re Garcia)*, 168 B.R. 403 (D. Ariz. 1994)). For purposes of § 727(a)(4)(B), a claim is defined by § 101(5) to mean a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right of payment." 11 U.S.C. § 101(5)(A) and (B). A § 727(a)(4) violation, in order to be actionable, requires both intentionality and materiality. *In re Natale*, 136 B.R. at 349. At least one bankruptcy court has

25

denied the debtor's discharge under § 727(a)(4)(B) where it found that the overstatement of a secured claim was a material falsity because it created "a mistaken belief that the liens against the debtors' residence exceeded its fair market value by $25,000.00." *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 585 (Bankr. E.D. Tenn. 1985).

Here, the alleged "false claims" are the same alleged statements that serve as the basis for Plaintiffs' § 727(a)(4)(A) cause of action. Namely, Plaintiffs allege Debtors' fraudulently made three false claims: (1) the inclusion in Schedule B of an account receivable for the "[b]alance of contract for construction services" as "[s]ecured by . . . Kurtz and . . . Fisher" in the amount of $29,000.00; (2) the inclusion in Schedule D of a business debt owed to Kurtz in the claimed amount of $42,000.00; and (3) the inclusion in Schedule D of a business debt owed to Fisher in the claimed amount of $36,500.00. Plaintiffs further allege that Mr. Henderson admitted under oath at the § 341 meeting of creditors that he knew Fisher had been fully paid for all services rendered in connection with the Contract, and that he did not owe any monies to Fisher in connection with the same. Mr. Henderson testified at the § 341 meeting of creditors, however, that he owed monies to Fisher in relation to another transaction. On November 19, 2008, Debtors filed amended schedules to remove these debts from their Amended Schedule D, entitled "Creditors Holding Secured Claims," and instead listed them in their Amended Schedule F, entitled "Creditors Holding Unsecured Nonpriority Claims." (No. 77.)

Plaintiffs have not alleged facts sufficient to demonstrate either fraudulent intent or materiality. The documents provided by Debtors and transmitted by Attorney Orville to Plaintiffs and the Chapter 7 Trustee following the § 341 meeting of creditors indicate that Mr. Henderson legitimately believed he was owed damages for unpaid services under the Contract. Moreover, the

filing of Amended Schedules retaining the business debts, which are not listed as contingent, unliquidated, or disputed, negate any inference of fraudulent intent and suggest instead that Debtors seek to maximize the effect of their discharge. Finally, Debtors list Plaintiffs' claim as a disputed debt on their Amended Schedule F. It is not apparent to the Court what liabilities have arisen from the Contract, given that both parties seemingly assert breach by the other. Plaintiffs, therefore, cannot proceed on their § 727(a)(4)(B) cause of action.

### D.    Denial of Discharge under § 727(a)(6)(A)

Section 727(a)(6)(A) provides that "the court shall grant the debtor a discharge, unless the debtor has refused to obey any lawful order of the court, other than an order to respond to a material question or to testify." Given the plain language of the statute that debtor "refuse" to obey a court order, "mere failure" is insufficient to justify the harsh sanction of denial of a discharge imposed by § 727. *In re Harmon*, 324 B.R. 383, 388 (Bankr. M.D. Fla. 2005). Consequently, discharge should only be denied where the debtor's noncompliance with a court order was a result of willful, intentional disobedience or dereliction rather than mere inadvertence or mistake. *In re Jones*, 490 F.2d 452, 456 (5th Cir. 1974).

Plaintiffs do not separately allege a cause of action under § 727(a)(6)(A) in the Second Amended Complaint, but rather lump their § 727(a)(3) and (a)(6)(A) claims together and make reference only to the Discovery Order, which, as stated above, was subsequently vacated. Even in the Complaint, Plaintiffs reference only one other order to support any potential claim under § 727(a)(6)(A). On December 8, 2008, the Court granted Plaintiffs' motion to schedule discovery and subpoena documents and Debtors for the Rule 2004 Exam. (No. 84.) The Order provided that the Rule 2004 Exam be scheduled within thirty days. Plaintiffs subsequently brought a motion to

sequester Debtors for the Rule 2004 Exam (No. 95), which the Court heard and denied on January

20, 2009.  As the record reflects, after the Discovery Order was vacated, Mr. Henderson provided

the financial information required thereunder and he complied with the Court's December 8, 2008

Order by turning over requested documents and appearing for the 2004 Exam.  (*See* Pls.' Compl.,

Exs. D, J, and K.)    In fact, Plaintiffs now rely on statements made by Mr. Henderson and

documents provided by Debtors to Dr. Scheidelman in connection with  the Rule 2004 Exam in

support of their allegations that Debtors made false oaths or presented false claims.  Plaintiffs

cannot, on the one hand, aver that Debtors intentionally disobeyed orders and, on the other, rely

upon facts generated by Debtors' Court ordered production to then meet their burden of proof under

a different statute.  Rather, Plaintiffs own inconsistencies are fatal to their § 727(a)(6)(A) cause of

action.  Plaintiffs therefore cannot prove any set of facts in support of their claim which would

entitle them to relief under § 727(a)(6)(A).  Accordingly, Plaintiffs' have failed to sufficiently plead

a cause of action under § 727(a)(6)(A).

### E.    Nondischargeability of Debt under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, . . . to the extent obtained

by false pretenses, a false representation, or actual fraud . . . ."   In support of their § 523(a)(2)(A)

claim, Plaintiffs state that Mr. Henderson "conceived the Contract . . . in fraud by spending the entire

$20,000.00 deposit on matters unconnected with the Contract."  Plaintiffs do not specifically allege

that Mr. Henderson lacked the intent to perform under the Contract when he entered into it.  Rather,

Plaintiffs cite several tasks actually performed by Mr. Henderson, albeit below the standard of

craftsmanship required by Plaintiffs.   Further, Plaintiffs fail to allege that Mr. Henderson

fraudulently induced them to enter into the Contract.

The Court begins its § 523(a) analysis with recognition of the general rule that debts and liabilities based solely upon a breach of contract are not excepted from discharge under this section. *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002).  False pretenses, false representation, and actual fraud represent differing concepts, *Vidomlanski v. Gabor (In re Gabor)*, 2009 Bankr. LEXIS 3110, at *11 (Bankr. S.D.N.Y. Oct. 8, 2009) *(citing In re Dobrayel*, 287 B.R. at 12), but in each case, a creditor must show that the debtor's actions were purposefully deceptive or misleading.  *See Cochran v. Reath (In re Reath)*, 368 B.R. 415, 422 (Bankr. D. N.J. 2006) (courts have routinely inferred requirements establishing intent, reliance and materiality in applying § 523(a)(2)(A)).  The frauds covered by the terms used in § 523(a)(2)(A) are those which "'in fact involve moral turpitude or intentional wrong.'"  *Id. (quoting* 4 Lawrence P. King, Collier on Bankruptcy (MB) ¶ 523.08[1][d] at 523-44.9 (15th Rev. Ed. 2006)).

To prove that a debtor acted by false pretenses, the plaintiff must show: (1) an implied misrepresentation or conduct by the debtor; (2) promoted knowingly and willingly; (3) to create a contrived and misleading understanding of the transaction on the part of the plaintiff; and (4) which wrongfully induced plaintiff to advance money, property, or credit to the debtor.  *In re Gabor*, 2009 Bankr. LEXIS 3110, at *12 *(citing Lubit v. Chase (In re Chase)*, 372 B.R. 125, 128 (Bankr. S.D.N.Y. 2007)).  To prevail on a claim of false representation, the plaintiff must show: (1) debtor made an express false or misleading statement; (2) with the intent to deceive; (3) on which the creditor justifiably relied; and (4) in order to induce the creditor to turn over money or property to the debtor.  *Id. (citing Weiss v. Alicea (In re Alicea)*, 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999)).  "Actual fraud" as used in § 523(a)(2)(A) means common law fraud, provable by showing: (1) a representation made by debtor to the creditor; (2) debtor's knowledge of the falsity when the

representation was made; (3) debtor's intent to deceive in making such representation; (4) creditor's justifiable reliance; and (5) creditor's damage as a result. *Id.* at \*13 *(citing In re Dobrayel*, 287 B.R. at 12 n.3 (internal citation omitted)). A creditor must plead and show each element of fraud in order to sustain a finding that a debt is nondischargeable under § 523(a)(2), including intent on the part of the debtor to deceive at the time the debt was created. *Dawley v. Gould (In re Gould)*, 73 B.R. 225, 227 (Bankr. N.D.N.Y. 1987). "It is insufficient to show that a debtor left unfulfilled a prior representation or promise." *Id. (citing cases)*.

In cases such as this one involving contractor-debtors, there are generally two ways to prove fraud or misrepresentation. *Commonwealth of Pennsylvania v. Burns (In re Burns)*, 2008 Bankr. LEXIS 3924, at \*10 (Bankr. M.D. Pa. July 11, 2008). "First, to show that the debtor entered into the contract with the intent of never complying with the terms; or second, that there was an intentional misrepresentation as to a material fact or qualification when soliciting or obtaining the work." *Id. (citing In re Antonious*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)); *see also, e.g., Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 150 (Bankr. D. Md. 1999) ("For a breach of contract to result in a nondischargeable debt, the debtor must have misrepresented his or her intention to perform contractual duties, which may be inferred if the debtor failed to begin performance."); *Czech v. Sieber (In re Sieber)*, 2009 Bankr. LEXIS 886 (Bankr. D. Md. Mar. 30, 2009). "Generally, when determining whether a contractor committed fraud in connection with a construction project, the question pivots on whether during the negotiations the contractor induced the property owner into signing the contract by making material false representations, like promising to obtain the necessary permits or overstating his qualifications." *Id.* at \*12. Substandard performance or a mere breach of the construction contract do not rise to the level of fraud necessary

30

to except the debt from discharge.

In this case, Plaintiffs do not allege that Mr. Henderson misrepresented his intention to perform under the Contract or his qualifications prior to entering into the same.  In fact, the exhibits supplied by Plaintiffs in support of their pleadings directly contradict any allegations that Mr. Henderson possessed the requisite intent to deceive at the time Plaintiffs engaged his services. Plaintiffs have supplied two additional work orders documenting change requests to the Contract, as well as an accounting of work performed by Mr. Henderson in relation to a home addition, including interior drywall, exterior stucco, and roofing.  (*See* Pls.' Compl., Exs. K & N.)  Plaintiffs' dissatisfaction with Mr. Henderson is the result of alleged "defects" in his construction, rather than his failure to perform at all.  Notably, Plaintiffs do not allege that Mr. Henderson misrepresented his qualifications to perform the work for which he was engaged.  Further, the damages claimed by Plaintiffs representing the cost to complete or repair the home improvements contemplated by the Contract confirm that this is at its core an action for breach of contract, not one for fraud.  For these reasons, Plaintiffs have failed to state a cause of action which can be maintained under § 523(a)(2)(A).

**F.    Nondischargeability of Debt under § 523(a)(4)**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  Plaintiffs generally allege that Debtors have committed all of these wrongs, without an apparent appreciation for the conjunctive statutory language or the differing burdens of proof requisite to each wrongful act.  As it must, the Court will separately address each independent prong of § 523(a)(4).

*1.    Fraud or Defalcation While Acting in a Fiduciary Capacity*

As the basis for their § 523(a)(4) cause of action, Plaintiffs state that Mr. Henderson took and spent their $20,000.00 deposit on matters unrelated to the Contract. The Court must first consider whether Mr. Henderson was acting in a fiduciary capacity when the alleged wrongful acts giving rise to Plaintiffs' § 523(a)(4) claim occurred. Stated differently, did a fiduciary relationship exist between Plaintiffs and Mr. Henderson as a result of the parties dealings? Courts have narrowly construed the term fiduciary for purposes of § 523(a)(4), holding that the fiduciary relationship must arise from a preexisting technical or express trust. *In re Dobrayel*, 287 B.R. at 14 (collecting cases in support of the proposition that the meaning of "fiduciary capacity" under federal law is more restricted than under common law or state law); *Pruett v. Moon (In re Moon)*, 1997 Bankr. LEXIS 2346, at *32 (Bankr. E.D. Va. Dec. 17, 1997) (many ordinary commercial relationships are excluded from the scope of § 523(a)(4)). State law may be consulted in determining whether and when a trust exists, but the applicable state law that creates a fiduciary relationship must clearly enumerate the fiduciary duties and identify the trust res. *In re Dobrayel*, 287 B.R. at 14-15 *(citing Johnson v. Woldman*, 158 B.R. 992, 996 (N.D. Ill. 1993); *Matter of Kawczynski*, 442 F. Supp. 413, 416 (W.D.N.Y. 1977)).

Although Plaintiffs do not specifically reference Article 3-A of New York Lien Law ("Article 3-A"), the Court infers from the language used in Plaintiffs' pleadings that they rely upon the same as Article 3-A creates a trust as soon as a home improvement contractor receives funds for the improvement of residential real property. N.Y. LIEN LAW § 70(1) (Consol. 2010). If an owner makes an advance deposit under a home improvement contract, the owner retains the property interest in such monies until the trust terminates, unless the law specifically provides that the advance can be utilized for another purpose. *Id.* § 71-a(4)(a) (Consol. 2010). The contractor is

32

required to deposit the funds in an escrow account, or to post a surety bond, contract of indemnity, or irrevocable letter of credit with the owner. *Id.* § 71-a(4)(a) & (b). The advance must remain in an escrow account or the bond, contract of indemnity or letter of credit must be continued until: (1) the money has been applied in accordance with a schedule of payment set forth in the home improvement contract; (2) there is substantial completion of the project; or (3) there is a default by the owner excusing the contractor's performance. *Id.* § 71-a(4)(d). Given the statutory scheme to protect residential homeowners, a fiduciary obligation at the time of contracting did run from Mr. Henderson to Plaintiffs. *See, e.g., Rogers v. State of New York*, 694 N.Y.S.2d 874, 877 (N.Y. Ct. Cl. 1999) ("[A]mendments extending the benefits of [A]rticle 3-A to owners and including special requirements for deposits on home improvement contracts were enacted in 1987."); *People v. Hollowell*, 168 A.D.2d 970, 971 (N.Y. App. Div. 4th Dept. 1990) ("[U]nder the 1987 amendment [to Article 3-A, applying to contracts entered into after March 1, 1988], 'trust claims' were extended to include claims of owners to funds advanced by them to contractors for the construction of home improvements."); *see also* 8-92 WARREN'S WEED NEW YORK REAL PROPERTY (MB) §§ 92.70-92.71 (2009) (homeowners are within the definition of trust fund beneficiary). Plaintiffs can therefore rely on Article 3-A to show fraud or defalcation while acting in a fiduciary capacity and, therefore, they have sufficiently plead the first necessary element in support of a claim under § 523(a)(4).

Once a fiduciary relationship is established, the plaintiff must also show that the debtor committed fraud or defalcation. As discussed above, Plaintiffs have not sufficiently alleged that Mr. Henderson acted with fraudulent intent under § 523(a)(2)(A). The Court need not reexamine that issue here. *See People of the State of New York v. Suarez (In re Suarez)*, 367 B.R. 332, 335 n.3 (fraud has the same meaning under subsections (a)(4) and (a)(6) of § 523) (*citing Spinoso v. Heilman*

(*In re Heilman*), 241 B.R. 137, 171 (Bankr. D. Md. 1999)).

The Second Circuit recently clarified what is meant by the term defalcation under §
523(a)(4), stating that defalcation "requires a showing of conscious misbehavior or extreme
recklessness." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 68 (2d Cir. 2007), *cert. denied*, 2009
U.S. LEXIS 576 (U.S. Jan. 12, 2009).   Such a standard "ensures that the term 'defalcation'
complements but does not dilute the other terms of the provision – 'fraud,' 'embezzlement,' and
'larceny,' – all of which require a showing of actual wrongful intent." *Id.*   Accordingly, this
"standard does not reach fiduciaries who may have failed to account for funds or property for which
they were responsible only as a consequence of negligence, inadvertence or similar conduct not
shown to be sufficiently culpable." *Id.* at 69.   With respect to the kind of conducts that constitute
defalcation, bankruptcy courts have generally held that commingling, failing to account for, or
misdirecting funds may suffice.   *In re Suarez*, 367 B.R. at 358.

Here, Plaintiffs have sufficiently asserted a cause of action for defalcation while acting in
a fiduciary capacity under § 523(a)(4).   Plaintiffs allege that Mr. Henderson knowingly diverted trust
assets, and that he understood he could face criminal liability for the same.   Plaintiffs' allegations
allow the Court to infer for the limited purposes of its present ruling that Mr. Henderson acted
recklessly or in conscious dereliction of his fiduciary duties.   Accordingly, Plaintiffs are entitled to
proceed on their § 523(a)(4) cause of action for defalcation while acting in a fiduciary capacity.

### 2.    *Embezzlement*

Courts look to the federal common law definition of embezzlement for purposes of
nondischargeability as "the fraudulent appropriation of property by a person to whom such property

has been intrusted, or into whose hands it has lawfully come." *In re Moon*, 1997 Bankr. LEXIS 2346, at *36 *(citing Moore v. United States*, 160 U.S. 268, 269 (1895)). To establish a claim of embezzlement under § 523(a), a creditor must show that: (1) property owned by another is rightfully in the possession of debtor; (2) debtor's appropriation of such property to a use other than the use for which the property was entrusted to debtor; and (3) circumstances indicating fraudulent intent. *In re Gabor*, 2009 Bankr. LEXIS 3110, at *18. "Absent intent to defraud, a debtor's appropriation of funds does not rise to the level of embezzlement." *Bd. of Tr., Adirondack Carpenters Pension Fund v. Parker (In re Parker)*, 388 B.R. 11, 21 (Bankr. N.D.N.Y. 2008) (*citing In re Bevilacqua*, 53 B.R. 331, 334 (Bankr. S.D.N.Y. 1985)).

Plaintiffs allege that Mr. Henderson failed to apply their deposit toward the purpose of the Construction Contract. As discussed in relation to Plaintiffs' § 523(a)(2)(A) cause of action, however, Plaintiffs have not sufficiently alleged that Mr. Henderson acted with an intent to defraud or deceive in his dealings with them or in his handling of their deposit. Plaintiffs cannot therefore maintain a cause of action for embezzlement.

3.    *Larceny*

"Larceny is distinguishable from embezzlement because in larceny, the original taking of the property must be unlawful." *In re Moon*, 1997 B.R. LEXIS 2346, at *40 (citation omitted). Where payments are lawfully received pursuant to a contract, as they were in the instant case, larceny cannot exist for purposes of § 523(a)(4). Plaintiffs concede that their $20,000.00 deposit was paid pursuant to the Construction Contract, in anticipation that it would be applied towards their home improvement performed by Mr. Henderson. Plaintiffs, therefore, cannot set forth a cognizable cause of action for larceny under § 523(a)(4).

35

### G.   Nondischargeability of Debt under § 523(a)(6)

Section 523(a)(6) prevents an individual debtor from discharging any debt that is the result of "willful and malicious injury." The terms "willful" and "malicious" are separate elements. *Rescuecom Corp. v. Khafaga (In re Khafaga)*, 2009 Bankr. LEXIS 3763, at *18 (Bankr. E.D.N.Y. Nov. 30, 2009) (*citing Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999)); *Chaffee v. Chaffee (In re Chaffee)*, 2009 Bankr. LEXIS 2644, at *9 (Bankr. N.D.N.Y. Jan. 12, 2009). Both must therefore be satisfied in order for Plaintiffs to prevail on any of their § 523(a)(6) claims.

Speaking to the willful element of § 523(a)(6), the Supreme Court specifically rejected a broad interpretation of the exception by narrowly holding that "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). The injury itself must be desired and in fact anticipated by the debtor in order for the debt to be excepted from discharge. *Id.* Thus, "[d]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. The term malicious refers to the debtor's motivation in committing the act and has been defined by the Second Circuit to mean "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 88 (2d Cir. 1996) (citations omitted). Actual or constructive malice will suffice, *In re Khafaga*, 2009 Bankr. LEXIS 3763, at *23, and may be imputed to the debtor in cases where a debtor seeks profit or some other benefit only upon a finding of aggravating circumstances, *id.* (collecting cases holding that an intentional breach of contract, without more, generally will not satisfy the malicious element).

Plaintiffs do not allege anywhere in the Second Amended Complaint that Debtors had the requisite state of mind to satisfy even the willfulness prong of § 523(a)(6). Plaintiffs do not specifically allege that Debtors intended to injure either of them. Rather, Plaintiffs seek relief based upon Mr. Henderson's purported negligence and sub-par performance during construction at their home. In fact, Plaintiffs only allegation of intent to cause injury to either Dr. or Mrs. Scheidelman is directed at someone other than Mr. Henderson, namely, Plaintiffs allege that Mr. Henderson failed to defend Dr. Scheidelman against the threats of Kurtz. As such, none of the allegations contained in Second Amended Complaint are actionable under § 523(a)(6).

## CONCLUSION

For the preceding reasons, Plaintiffs' causes of action for denial of discharge under § 727 are dismissed with prejudice in their entirety under Rule 12(b)(6) because the Second Amended Complaint fails to state a claim for which Debtors' discharge may be denied. Plaintiffs' causes of action for nondischargeability under § 523(a)(2) and (6) are likewise dismissed with prejudice under Rule 12(b)(6) because the Second Amended Complaint fails to state a cognizable claim under either subsection of § 523 upon which relief could be granted. However, Plaintiffs' cause of action for nondischargeability under § 523(a)(4), to the extent premised on defalcation while acting in a fiduciary capacity, survives dismissal and Plaintiffs are therefore entitled to only proceed with respect to Paragraphs 200 through 204 of the Second Amended Complaint.[17]

---

[17] Plaintiffs have requested a jury trial, as marked on their Adversary Proceeding Cover Sheet. At the outset, the Court notes that "there is no cognizable jury trial right with respect to the limited issue of nondischargeability." *Sobel v. Weinstein (In re Weinstein)*, 237 B.R. 567, 574 (Bankr. E.D.N.Y. 1999). To determine whether the Seventh Amendment right to a jury trial attaches in a bankruptcy case, the primary question is whether the proceeding at issue is legal or equitable in nature. *Schieber v. Hooper (In re Hooper)*, 112 B.R. 1009, 1011 (B.A.P. 9th Cir. 1990). "Dischargeability actions are historically equitable in nature and tried without juries."

Based on the foregoing, it is hereby

ORDERED, that Debtors' motion to dismiss Plaintiffs' Second Amended Complaint under Rule 8(a) is denied; and it is further

ORDERED, that Debtors' request for alternate relief in the form of a more definite statement under Rule 12(e) is denied; and it is further

ORDERED, that Plaintiffs' causes of action for nondischargeability under § 523 against Mrs. Henderson are dismissed with prejudice in their entirety under Rule 12(b)(6); and it is further

ORDERED, that Plaintiffs' causes of action for denial of discharge under § 727 are dismissed with prejudice in their entirety under Rule 12(b)(6); and it is further

ORDERED, that Plaintiffs' causes of action for nondischargeability under § 523(a)(2) and (6) are dismissed with prejudice under Rule 12(b)(6); and it is further

ORDERED, that Plaintiffs' cause of action for defalcation while acting in a fiduciary capacity under § 523(a)(4) survives dismissal under Rule 12(b)(6); and it is further

ORDERED, that Debtors shall serve and file an Answer to Paragraphs 200 through 204 of

---

*Coke Chevrolet Co. v. Cummins*, 1992 Bankr. LEXIS 1352, at *2 (Bankr. W.D. Ark. May 12, 1992). A proceeding which addresses solely the issue of dischargeability, without reaching questions of liability and amount, does not give rise to an entitlement to a jury trial. *Id.*, at *7-8. If the plaintiff seeks an adjudication of liability and damages, however, predicated upon a common law action for fraud, plaintiff may be entitled to a jury trial on those issues. *Boudle v. The CMI Network, Inc.*, 2007 U.S. Dist. LEXIS 82336, at *16 (E.D.N.Y. Nov. 6, 2007). This right, if found to exist, may be waived by a party upon the filing of a proof of claim which submits such party to the bankruptcy court's equitable jurisdiction in proceedings affecting that claim. *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 466-67 (2d Cir. 2008)("[A] creditor loses its jury trial right only with respect to claims whose resolution affects the allowance or disallowance of the creditor's proof of claim or is otherwise so integral to the restructuring of the debtor-creditor relationship."). The Court need not further address Plaintiffs' jury trial demand or whether Plaintiffs have in fact waived such right, as the Court will, assuming the parties proceed to trial, in the first instance hear and determine only the limited issue of whether the debt at issue is excepted from discharge.

38

Plaintiffs' Second Amended Complaint, or file such other responsive pleading as they deem

appropriate, within ten days of docket entry of this Memorandum-Decision and Order; and it is

further

      ORDERED, that Debtors motion in lieu of an Answer, if any, shall made returnable at the

Court's regular motion calendar in Binghamton, New York, on February 25, 2010.

      IT IS SO ORDERED.

Dated at Utica, New York
this 27th day of January 2010


          /s/ Diane Davis
          DIANE DAVIS
          United States Bankruptcy Judge